**MINCHEW v. HANKINS et al. (No. 1874.)***

(Court of Civil Appeals of Texas. Amarillo. Dec. 14, 1921. Rehearing Denied Jan. 25, 1922.)

Joint-stock companies ⊂⊃8—Evidence held to sustain finding that contract was not absolute sale of stock, and that there was no mutual rescission.

Evidence *held* sufficient to sustain a finding that there was no absolute sale of the stock of a joint stock company, but only a contract to sell, and that the dividends returned with the stock belonged to the plaintiffs, in that title was not to pass to the defendant until he paid for the stock, and therefore that there was no mutual rescission.

Appeal from District Court, Childress County; J. A. Nabers, Judge.

Suit by Henry Hankins and another against A. P. Minchew. Judgment for plaintiffs, and defendant appeals. Affirmed.

E. E. Diggs, of Childress, for appellant.
Aynesworth, Williams & Watkins, of Wichita Falls, for appellees.

HALL, J. The appellees, Henry Hankins and Claude Terrell, sued appellant for themselves and 27 other parties, for the recovery of $11,260, with interest from June 15, 1920, alleging in substance that on or about the 15th day of December, 1919, appellees and 27 other persons named in the petition were the owners of stock in the Rainbow Oil Company, a joint-stock company, and that by contract between said company, acting through its trustees and the appellant, the trustees were to transfer all of the property of said Rainbow Company to the Mid-Texas Oil Company, for which the appellant, who was president of the Mid-Texas Company, would issue to each of said stockholders of the Rainbow Company stock of the Mid-Texas Company, at the ratio of $2 of the stock of the Mid-Texas Company at par for $1 of the Rainbow stock; that as a part of the consideration for said contract appellant further agreed to take and pay for in cash six months thereafter all such stock in the Mid-Texas Company as should be issued to the appellees and other stockholders of the Rainbow Company, 50 cents for each $1 of stock so purchased of what was known as stockholders' stock, and that for such stock as was known as promoters' stock he should pay 60 per cent. of the par value thereof; that said contract was an unconditional one upon the part of the said Minchew, was at the option of the various stockholders of the Rainbow Company, in that it gave them the option to sell the stock held by them in the Mid-Texas Oil Company to the said Minchew if they elected to make said sale, and notified him of such election within the 15-day period provided for in said contract; that the parties named

in the petition accepted the stock issued to them by the Mid-Texas Company in lieu of their stock in the Rainbow Company, and did then and there elect to sell the same to the said Minchew, and did then and there notify him within the 15 days' time, and forwarded said stock to him, which was received by him within the 15 days; that they notified the said Minchew of their election to sell the several certificates of stock, amounting to $11,260, which is now due and owing by the said Minchew for the said several certificates of stock; that by reason of the premises and the election of the parties then owning and holding said stock to sell the same to the said Minchew, and by reason of their having within the period of 15 days notified the said Minchew of their election to sell him the stock, the said Minchew became liable and bound and promised to pay the said owners thereof the full amount of the 50 per cent. of the par value thereof, and after demand he has failed and refused to pay the same or any part thereof.

The petition further alleges:

"Plaintiffs say that they are now the legal owners and holders of said stock and entitled to demand and receive all right, title, interest, claim, dues, and demands by reason thereof, and have the right to demand payment thereof and therefor under said contract. Plaintiffs further say that there is no known market value of the stock in the Mid-Texas Oil Company, and that it has no value known to them; that they herewith tender to the said defendant such shares thereof which they have in their possession."

Plaintiffs further declare that the trustees of the Rainbow Company had the right to make the sale of its property; that a writ of attachment has been issued and levied upon the real estate shown in the sheriff's return thereon, and pray that upon final hearing they have judgment for their debt, damages, and costs of suit, with interest from the 15th day of June, 1920, etc. The appellant answered, denying that plaintiffs, Hankins and Terrell, were the owners of the stock, and further alleges that on the 8th day of June, 1920, he wrote a separate letter to each of the stockholders of the Rainbow Company, in which letter he stated that such stockholders had on December 31, 1919, given him an option of 6 months for the purchase of their stock, and that the market conditions on all stocks at that time was such that it was impossible for him to avail himself of this option, and that unless it would be possible for them to extend the option for another 6 months the stock would be returned to them at their pleasure, and that if he did not hear from them by the 20th of June he would return their stock to them; that on June 21, 1920, he wrote another separate letter to each of such stockholders, returning to them their various certificates of stock in the Mid-Texas

Oil Company, and at the same time and in the same letter mailed them and each of them a check for 2 per cent. dividend upon the stock held by each of them in said Mid-Texas Company; that all of said parties received and accepted with said dividend checks their certificates of stock except Charles Bryan, Clarence Bailey, Claude Terrell, Mrs. W. O. Ballew, and Mrs. Phil Price; that the remaining parties, by accepting said stock and the dividend thereon, are barred and estopped from recovering against him in this cause; that the said parties, Bryan, Bailey, Terrell, Mrs. Ballew, and Mrs. Price, refused absolutely to accept their stock issued by the Mid-Texas Company in exchange for their stock in the Rainbow Company, and thereby refused to ratify the sale of their Rainbow stock made by the trustee. Wherefore they are barred and estopped from recovering against him the 50 per cent. of the par value thereof. There are other allegations which under the briefs became immaterial. A trial before the court without a jury resulted in a judgment in favor of appellees for the full amount claimed and a foreclosure of the attachment lien upon the lands levied upon in virtue of the writ. The court filed findings of fact and conclusions of law which, in so far as they are material to the issues submitted here, are substantially as follows:

"On the 15th day of December, 1919, there existed a joint-stock association known as the Rainbow Oil Company, with F. B. Bryan, Roy Coffee, Henry Hankins, John R. Scott, and B. M. Harrison as its trustees and managers, with its office and place of business in Childress, Tex. At that date the assets of the said company consisted of an undivided one-fourth interest in an oil lease in block 96, in Wichita county, Tex., on which was a producing well. That the aforesaid trustees were duly authorized to sell said property, and on the 15th day of December, 1919, sold the same to A. P. Minchew for a consideration of $76,000, in stock of the Mid-Texas Oil Company, to be delivered to the stockholders of the said Rainbow Oil Company as their respective interests appeared at the ratio of $2 of Mid-Texas Oil stock for each $1 of Rainbow stock held by the respective stockholders, and the further consideration that in case he, the said Minchew, was so notified he would, within six months from the 15th day of December, 1919, purchase said stock at said agreed price. As to what was known as promotion stock, however, Minchew only agreed to purchase 60 per cent. of such stock. Certain original stockholders of the Rainbow Company availed themselves of said opportunity to sell their stock for said price to Minchew, notifying him in the required time, and which said Minchew had agreed to so purchase. That the contract dated December 15, 1919, was in writing but has been lost and by secondary evidence has been proven, as above stated. On the 12th day of January, 1920, dividend checks of 2 per cent. were issued by Mid-Texas Oil Company, of which Minchew was the president, to each of the parties named in the petition. That Minchew then regarded these stockholders as the owners of said stock at that time. And I

further conclude that they were the owners at that time and were entitled to said dividends, and that by the terms of the contract said Minchew was not then the owner of said stock nor could be until he could pay for same. That in reply to his letter of June 8th, in which Minchew notified the stockholders that he could not pay for same unless he heard from them, etc., a number of the stockholders joined in a letter to him, informing him they would hold him to his agreement to purchase said stock as per the terms of the contract; that Minchew then mailed to each of the stockholders the certificates of stock which had theretofore been returned to him with the dividend checks attached; that all but four of the stockholders received the stock and checks and cashed the checks. That Louis Raney, Mrs. Ballew, Claude Terrell, and Clarence Bailey refused to accept the stock or the checks."

The court concludes as a matter of law that the dividend checks were the property of the stockholders from the date of their issuance; that the contract was executory, and that the stock remained the property of the stockholders, and that they were not estopped by accepting the dividends.

Appellant insists that the uncontroverted evidence shows that the stockholders in the Rainbow Company sold their Mid-Texas stock after it had been issued to them to Minchew, and delivered him their certificates, and that the stock was owned by Minchew, which entitled him to the dividends to be derived therefrom, and that, when he later informed them that he could not pay for the stock, and returned them the certificates, together with 2 per cent. dividends thereon, said parties, by accepting the stock and the dividends, were estopped to sue for the value of the stock. It is further insisted that the court erred in finding as a fact that Minchew was not the owner of the stock when the checks for the dividend of 2 per cent. were issued by the Mid-Texas Company, and in finding that the owners were entitled to receive the dividends, since they were the owners of the stock, for the reason that all of the evidence showed that the stock was sold to Minchew in December, 1919, and that he had 6 months from that date in which to pay for same, and, further, in the court's conclusion of law that said stock remained the property of the various parties, and was theirs at the time the dividend was declared, and that the owners thereof, having received the stock and the dividends, were estopped to at the same time recover the agreed value of said stock.

The allegations of the first amended original petition, set out above in substance, are not very clear, and we have had some difficulty in determining the exact nature of the suit. The exceptions to the petition were not urged. Considering the pleading as a whole, however, we have concluded that it does not allege a sale of the stock to Minchew, but rather an agreement to sell six months from date. It is said in 35 Cyc. 27:

"A contract to sell goods may be defined as a contract whereby the seller agrees to transfer the property in goods to the buyer for a price which the buyer pays or agrees to pay. A contract to sell is also termed 'an executory contract of sale' and 'an agreement to sell.'"

In Simkins, Contracts and Sales (3d Ed.) p. 48, we find this language:

"An executory contract is one unperformed by both parties or there remains something to be done on both sides as a promise for a promise, neither party having performed his part. * * * Thus, any agreement to sell and deliver personal property in the future at a stated price is executory, or to sell a tract of land where the deed is to be executed in the future and the purchase money to be paid. * * * So, if I agree to sell you a horse at a certain price at a future day the contract is wholly executory, but when I deliver the horse, the subject-matter of the agreement, the contract is executed, though the money is not paid."

See, also, 1 Mechem on Sales, § 5.

The evidence showing the terms of the contract upon which the trial court bases his findings, and which is attacked by the foregoing assignments of error, is in substance as follows: The witness Bryan, after testifying that the original contract had been mislaid, and could not be found, said:

"Minchew proposed to give us two shares of his stock for one of ours, figuring them on the $100 basis. His stock was $10 and ours was $50 per share, and he was to give us $76,000 for our one-fourth interest, figuring it on 90 days, and I told him we wanted some money out of it, and he said, 'If you will give me 90 days I will give you two shares of mine for one of yours, and if you will give me 90 days I will give you $100 for my stock back.' He was to give two shares for our one at $100 basis. He was to give us $76,000 worth of his stock, which was just double our capitalization, which was just $38,000. I and my officials transferred our interest in that well, and it never has been returned. We were to furnish him a list of our stockholders; that was done. These stockholders were to return that stock to him within 15 days from the time they received notice of this trade and he was to give them back—the final contract was if this stock was returned to him within 15 days from the time of this notice he was to pay back the stockholders $50 per share, which was equivalent to par for the original Rainbow. * * * In the afternoon he agreed on the 90 days, and when we came to your office he said he would like to have more time; he said he didn't know whether he could return it in 90 days or not, and we few agreed to give him his own time—6 months; our final agreement was six months. * * *

"Q. You allege that he was to pay you for this stock—that you sold him this stock in the Mid-Texas Oil Company, didn't you? A. We sold him our interest in the Rainbow. Our contract was not that we were to turn him over our Mid-Texas oil stock and that he was to pay us for that in six months—he was to pay us when we turned it over. I think all that stock was returned him after it was issued; I think he kept it.

"Q. On the 8th day of June he wrote you and other people interested in that, that he could not pay for that stock and would have to exercise his option not to buy it, and did return the certificates, and you and Mr. Coffee wrote him that there was not any conditional contract—that it was an obligation? A. It was not a conditional contract; he didn't have 'my certificates of the stock. * * * He had no option whatever."

Henry Hankins testified with reference to the contract as follows:

"Heard the contract drawn up. I don't know where the contract is now. Six months was the time in which Mr. Minchew had to pay for this stock. I believe he said he could possibly begin paying us in thirty days; that he had agents out over the country in different states. He said those agents were selling stock. * * * Our contract with Mr. Minchew in December, 1919, was that we were to turn him over our Rainbow 'stock and he was to issue us two shares of Mid-Texas for each Rainbow share, and was to sell one share of the Mid-Texas stock and get $50, which was par, for the Rainbow stock; that was a sale if I know what a sale is.

"Q. Then it was a sale if you delivered him your stock in the Mid-Texas? A. I didn't have my Mid-Texas then; I never did have it. All that I had was a letter of acknowledgment, I think a receipt for this Rainbow stock, showing he had received my Rainbow 'stock, and he receipted me instead of sending me the stock and was to pay me for that in six months from that time."

A. P. Minchew testified that he was to pay for the Mid-Texas stock at the rate of 50 per cent. of its par value, to be paid for within six months from the date of the contract made with the trustees of the Rainbow Company. He stated that the contract was an unconditional one. The documentary evidence bearing upon that issue is shown by several letters in substance as follows:

On June 8, 1920, Minchew wrote Bryan and Coffee, referring to the hard times, by reason of which he had not been able to sell the Mid-Texas stock, and, further:

"Upon receipt of this letter I am going to ask that you extend my option for an additional six months on this stock that I hold of yours; otherwise at your request I will turn the same and at some future date if the latter is more acceptable to you. I shall endeavor to handle same for you and perhaps it will be with a great profit to you. Conditions, however, will have to change materially before this can be done."

In reply to this letter Bryan, Coffee, Hankins, Scott, and Tubb wrote Minchew on June 14th, in part as follows:

"Appreciating your position in the matter, and in view of same, we will be willing to accept 50 per cent. of the money now due on the promotion stock as partial payment of terms, as per original contract, with the understanding that the other 50 per cent. is to be paid within 90 days from the due date of the orig-

inal contract. Referring to your contract you will note that there is no option to be exercised as you intimate in your correspondence. It was a straight sale of our interest to you."

On June 18th Terrell, joined by 13 of the Rainbow stockholders, other than the appellees, wrote Minchew, stating that they had employed a lawyer, and said in part:

"We, the undersigned stockholders of the Mid-Texas Oil Company, wish to put you on notice that we will not accept the returned Mid-Texas Oil Company's stock, but that we demand payment for same as per your agreement to purchase within six months from their respective dates. You had no option to purchase, but agreed to purchase; therefore you had no right to an extension and we do not grant you the time asked for, but on the contrary, wish to state plainly if you have not paid us according to your agreement suit will be brought on all stock held by us and others on the dates that your obligations become due and payable, and most of them will be due on June 26th, 1920. This is not a bluff."

On June 21, 1920, Minchew wrote Bryan and Coffee in part as follows:

"I am frank to state to you now that if you don't care to grant me an additional option of six months on that stock the same will be yours and I am returning it herewith as follows: * * * I received a letter from Childress with quite a number of signatures to it, threatening suit, etc., if I didn't remit to them by the 26th instant. I judge these parties have talked with you boys and have been advised that this was the thing to do. I am today returning their stock also. If there is to be a suit there will just have to be one. I will see if they can force me to do it. Postcript: You will also find inclosed dividend check that was due on the above stock; this check has been held in abeyance and attached to the stock."

It will be observed that, according to Minchew's letters written in June, he insisted that under the contract with appellees he had merely an option to purchase the stock. According to the allegations in his second amended answer, upon which the case was tried, the contract was not an option but was an executory sale, which had been mutually rescinded before the date of payment by the acceptance, on the part of appellees, of the stock and 2 per cent. dividend checks which he had forwarded to the respective stockholders. It is probable it is this inconsistent attitude which prompted the trial court in utterly disregarding his testimony. It will be observed from a reading of the foregoing excerpts from the statement of facts that the appellees do not entirely agree upon what constitutes the contract as originally entered into. Hankins says that was a sale if he knows what a sale is. The letter of Bryan, Coffee, and others, written June 14th, asserts that it was a straight sale of their interest to Minchew. The only evidence in the record which sustains the court's finding and con-

clusion, to the effect that the contract was not a sale of the stock to be paid for in six months, and was not an option, but was an executory contract to sell—that is to take and pay cash for the stock at the end of six months—is the statement of Bryan that the "contract was not that we were to turn him over our Mid-Texas oil stock, and that he was to pay us for that in six months; he was to pay us when we turned it over," and the letter written by Terrell and others on June 18th, which seems to have been admitted without objection.

Since the court's finding is in accordance with the allegations of the amended petition, and this testimony tends to support it, the judgment will be affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes